In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00236-CR
______________________________


WILLIAM ROY KIMBALL, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 410th Judicial District Court
Montgomery County, Texas
Trial Court No. 03-02-01485-CR


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â William Roy Kimball appeals his conviction for driving while intoxicated (DWI). A jury
found him guilty and assessed his punishment at ten years' imprisonment and a $10,000.00 fine, but
placed him on community supervision for ten years. The trial court ordered that he serve 180 days
in jail as a condition of community supervision.
Â Â Â Â Â Â Â Â Â Â Â Â Kimball contends in his first point of error the trial court erred in denying his motion to
suppress evidence, alleging there was no reasonable suspicion for the police to have made the stop. 
Second, he contends the evidence was legally and factually insufficient to support a conviction. We
affirm the trial court's judgment.
I.Â Â Â Â Â Â Â Â Â Reasonable Suspicion for the Stop
Â Â Â Â Â Â Â Â Â Â Â Â Kimball contends that the police did not have a reasonable suspicion to stop him and that the
trial court erred in denying the motion to suppress evidence. We review the trial court's ruling on
a motion to suppress by an abuse of discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex.
Crim. App. 1999). When reviewing an appeal from the trial court's denial of a motion to suppress,
great deference is afforded to the trial court's decision on mixed questions of law and fact that turn
on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). An appellate court must view the evidence in the light most favorable to the trial court's
ruling. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). In a suppression hearing,
the trial court is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). For mixed questions of law
and fact which do not fall within this category, an appellate court may conduct a de novo review of
the trial court's ruling. Hernandez v. State, 957 S.W.2d 851, 852 (Tex. Crim. App. 1998). Hence,
de novo review applies when the facts are undisputed. State v. Jennings, 958 S.W.2d 930, 932 (Tex.
App.âAmarillo 1997, no pet.). Additionally, questions involving reasonable suspicion and probable
cause should be reviewed de novo on appeal. Ross, 32 S.W.3d at 856; Singleton v. State, 91 S.W.3d
342, 345â46 (Tex. App.âTexarkana 2002, no pet.). Finally, if the trial court's decision is correct
on any theory of law applicable to the case, we will uphold that decision. Ross, 32 S.W.3d at
855â56; Singleton, 91 S.W.3d at 346. 
Â Â Â Â Â Â Â Â Â Â Â Â Trooper Caryn McAnarney stopped Kimball without a warrant; therefore, the State bore the
burden at the suppression hearing of demonstrating the stop was reasonable within the totality of the
circumstances. See Hulit v. State, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998); Russell v. State,
717 S.W.2d 7, 10 (Tex. Crim. App. 1986). To justify a traffic stop, the officer must have observed
specific objective, articulable facts which, in light of the officer's experience and personal
knowledge, together with inferences from those facts, would warrant a reasonable person to believe
a traffic violation had occurred. See Davis v. State, 947 S.W.2d 240, 242â43 (Tex. Crim. App.
1997); Singleton, 91 S.W.3d at 346. This standard is an objective one: there need only be an
objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. 
Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); Singleton, 91 S.W.3d at 346. 
Â Â Â Â Â Â Â Â Â Â Â Â The objective standard is based on the reasoning that a reasonable officer in the same
situation would have reasonable suspicion to execute the stop and, therefore, nothing objectively
unlawful would have been done. See Singleton, 91 S.W.3d at 347; Whren v. United States, 517 U.S.
806 (1996) (the traffic violation itself constituted an objectively reasonable basis for the stop, so any
ulterior motive on the part of the officers was irrelevant). In this case, Trooper McAnarney
articulated that she observed Kimball's truck's rear license plate light was not working. Failure to
have a light that illuminates the rear license plate is a traffic violation. See Tex. Transp. Code Ann.
Â§Â 547.322(f) (Vernon 1999). 
Â Â Â Â Â Â Â Â Â Â Â Â Trooper McAnarney testified that, as Kimball passed her, she looked at the side of his vehicle
and noticed that his license plate light was not working. McAnarney turned off her headlights to
confirm her observation. After confirming that the license plate light was not illuminated, she turned
on her emergency light. When Kimball pulled over, McAnarney told him the reason for stopping
him. Kimball looked at the rear license plate and responded that it was not his truck. Kimball did
not claim the light was working. 
Â Â Â Â Â Â Â Â Â Â Â Â In contrast, Glenn Hoagland, the owner of the truck and Kimball's grade school friend,
testified that the truck license plate light was working when he picked up the truck from the
impound. Joshua Matthew Perez, a passenger with Kimball, also testified that the light illuminating
the rear license plate was working. In a suppression hearing, the trial court is the sole judge of the
credibility of the witnesses and the weight to be given their testimony. Hoagland was impeached by
the State when he testified that he had been with Kimball the entire night and had not seen him have
a single drink. Kimball admitted to having a couple of drinks that night. Further, Perez admitted
he was intoxicated on the night of the arrest. The trial court could have determined Trooper
McAnarney's testimony to be more credible than that of Hoagland or Perez. 
Â Â Â Â Â Â Â Â Â Â Â Â Based on the totality of the circumstances, the specific objective, articulable facts of
McAnarney, in light of her experience and personal knowledge, together with inferences from those
facts, were sufficient to support the trial court's finding of reasonable suspicion that a traffic violation
had occurred. This point of error is overruled. 
II.Â Â Â Â Â Â Â Sufficiency of the Evidence
Â Â Â Â Â Â Â Â Â Â Â Â In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307 (1979). This calls on the court to view the relevant evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both
direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999).
Â Â Â Â Â Â Â Â Â Â Â Â When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). There are two ways in which we may find the evidence to be
factually insufficient. Id. First, if the evidence supporting the verdict, considered alone, is too weak
to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, ifâwhen we weigh the evidence supporting and contravening the
convictionâwe conclude that the contrary evidence is strong enough that the State could not have
met its burden of proof, we must find the evidence insufficient. Id. at 484â85. "Stated another way,
evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under
a beyond-a-reasonable-doubt standard." Id. at 485. If the evidence is factually insufficient, then we
must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex.
Crim. App. 1996). 
Â Â Â Â Â Â Â Â Â Â Â Â Kimball argues the evidence is legally and factually insufficient to support the conviction
because the videotape of the arrest from the police car showed Kimball had no signs of intoxication,
because of the testimony of Hoagland and Perez that Kimball was not intoxicated, and because
Kimball was not allowed to perform the sobriety tests after his arrest.
Â Â Â Â Â Â Â Â Â Â Â Â The definition of intoxication as provided in the jury charge was "not having the normal use
of his mental and physical faculties by reason of the introduction of alcohol, a controlled substance,
a drug, a dangerous drug, and a combination of at least two of these substances into the body." 
Trooper McAnarney testified Kimball smelled strongly of alcohol, had very thick, slurred speech,
and was very unsteady on his feet. She testified that the strong smell of alcohol was coming from
Kimball's breath and his person. Kimball admitted he had been drinking. While Kimball was
looking for his insurance card, McAnarney noticed "an 18-pack of beer sitting behind . . . the driver's
seat." She also observed 
a Bud light can that was half full, cold to the touch, sitting upright next to the
passenger seat as if it was trying to be pushed underneath it. There was an open,
approximately half full, cold to the touch, Budweiser beer can that was pushed back
in the same manner on the driver's seat.
Â Â Â Â Â Â Â Â Â Â Â Â Further, Kimball became argumentative and uncooperative when McAnarney attempted to
conduct the field sobriety test. McAnarney asked Kimball three or four times if he would cooperate
to do the field sobriety tests, to which he replied "no," while balling up his fist. Finally, Kimball
refused to submit a breath specimen. In the light most favorable to the verdict, the evidence is
legally sufficient to support a conviction for DWI.
Â Â Â Â Â Â Â Â Â Â Â Â Next, we review the entire record for factual sufficiency. The jurors also heard the testimony
of Hoagland, who testified Kimball had not drunk any alcohol the entire night, even though Kimball
admitted to having a couple of drinks earlier that night. Perez testified that he was intoxicated, not
Kimball. Trooper McAnarney testified regarding Kimball's thick, slurred speech, unsteady balance,
and failure to cooperate with the field sobriety test. Also, the jurors were shown the videotape of
the arrest. The jurors are in the best position to assess the credibility of the witnesses. Singleton,
91 S.W.3d at 350. Contravening evidenceâthe testimony of Hoagland and Perezâis sufficiently
impeached and not strong enough that the State could not have met its burden of proof. McAnarney
acknowledged that, after she arrested Kimball and placed him in handcuffs, he requested to take the
field sobriety tests. By that time, a crowd of fifteen to twenty people had gathered and McAnarney
was concerned about "safety issues." Due to safety concerns, it is not the Department of Public
Safety's policy to uncuff suspects after an arrest. The fact that McAnarney refused Kimball's request
for sobriety tests, after he had previously declined them, does not render the evidence factually
insufficient. We find the evidence is factually sufficient to support the conviction. 
Â Â Â Â Â Â Â Â Â Â Â Â For the above stated reasons, we affirm the judgment of the trial court. 
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â September 28, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â December 1, 2004

Do Not Publish
Â 



ink:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpMiddle, li.MsoFootnoteTextCxSpMiddle, div.MsoFootnoteTextCxSpMiddle
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpLast, li.MsoFootnoteTextCxSpLast, div.MsoFootnoteTextCxSpLast
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:Shruti;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:"Times New Roman";}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:Shruti;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:"Times New Roman";}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:Shruti;
 mso-ascii-font-family:Shruti;
 mso-hansi-font-family:Shruti;
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:Shruti;
 mso-ascii-font-family:Shruti;
 mso-hansi-font-family:Shruti;
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-12-021-CR%20In%20re%20Yanez\,%20Jr.%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No.
06-12-00021-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  IN
RE:

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ROBERTO
YANEZ, JRÂ Â Â Â Â Â Â Â Â  

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Original
Mandamus Proceeding

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before
Morriss, C.J., Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum
Opinion by Chief Justice Morriss

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM
OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Roberto Yanez, Jr., filed a petition
for writ of mandamus listing Charles C. Bailey, the Titus County District
Attorney, and the 276th Judicial District Court in Titus County as
respondents.Â  Yanez states that he was
arrested in Titus County, that the arrest resulted in a detainer that Âexcludes
him from participating in rehabilitative and educational programs,Â and that he
filed a motion to dismiss the pending charge Âbased on the StateÂs failure to
bring Petitioner to trial within the prescribed 180 day period specified under
theÂ Interstate Agreement on Detainers Act.Â 
Yanez prays that we issue a writ of mandamus compelling the district
court and Bailey Âto either dismiss the pending charge or bring him for a
hearing.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  This Court has jurisdiction to issue
a writ of mandamus against Âa judge of a district or county court in the court
of appeals district.ÂÂ  Tex. GovÂt Code Ann. Â§ 22.221(b) (West
2004).Â  Because we do not have
jurisdiction against a district attorney unless necessary to enforce our
jurisdictionÂand because Yanez has not demonstrated that mandamus relief is
necessary for this purposeÂwe have no jurisdiction to the extent Yanez seeks
relief against Bailey.

Â Â Â Â Â Â Â Â Â Â Â  This leaves the request that writ
issue against the district court. Â Mandamus
is an extraordinary remedy that issues only to correct a clear abuse of
discretion or violation of a duty imposed by law when no other adequate remedy
by law is available.Â  State v. Walker, 679 S.W.2d 484, 485
(Tex. 1984) (orig. proceeding).Â  Due to
the nature of this remedy, it is YanezÂs burden to properly request and show
entitlement to the mandamus relief.Â  Walker v. Packer, 827 S.W.2d 833, 837Â39
(Tex. 1992) (orig. proceeding); see
Barnes v. State, 832 S.W.2d 424, 426 (Tex. App.ÂHouston [1st Dist.] 1992,
orig. proceeding) (ÂEven a pro se applicant for a writ of mandamus must show
himself entitled to the extraordinary relief he seeks.Â). 

Â Â Â Â Â Â Â Â Â Â Â  Yanez has the obligation to provide
us with evidence in support of his claim that he is entitled to mandamus
relief.Â  He filed letters from the United
States Department of Justice to Bailey requesting that final disposition be
made on the charge.Â  The last letter sent
to Bailey September 28, 2010, reminded that Yanez was to be brought to trial Âon
the charges specified in your detainerÂ or the Â180 day time period [would]
lapse on December 19, 2010.ÂÂ  There is
nothing among the papers filed by Yanez indicating whether any further action
was taken or even establishing the pendency of an action in the 276th Judicial District
Court.

Â Â Â Â Â Â Â Â Â Â Â  Titus County, ostensibly the county
involved here, lies within both the 276th Judicial District and the 76th
Judicial DistrictÂmostly overlapping districts covering Titus, Camp, and Morris
Counties, except that the 276th Judicial District also covers neighboring
Marion County.Â  Though Yanez claims that
the 276th Judicial District Court is responsible, the only court reference in
the forms he has attached to his petition references the 76th Judicial District
Court.

Â Â Â Â Â Â Â Â Â Â Â  There is no record from either
district court, and nothing to suggest that any charges are still pending or
that any request has been made to either court for a ruling.Â  Hence, Yanez has failed to meet his burden to
show entitlement to mandamus relief.

Â Â Â Â Â Â Â Â Â Â Â  We deny the petition for writ of
mandamus. 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  January 25, 2012

Date
Decided:Â Â Â Â Â Â Â Â Â Â Â Â  January 26, 2012

Â 

Do
Not Publish

Â 

Â